UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES BOWMAN, individually and as next friend for JAMEEL BOWMAN, and MELISSA GIBSON, as next friend for COURTNEY ANDERSON, on behalf of themselves and others similarly situated, Plaintiffs, vs. INTERNATIONAL BUSINESS MACHINES CORPORATION, ACS HUMAN SERVICES, LLC, PHOENIX DATA CORPORATION and ARBOR E&T, LLC, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 1:11-cv-00593-RLY-TAB |
| INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, Interested Party. | ) ) ) ) | |

**ORDER ON DEFENDANT INTERNATIONAL BUSINESS MACHINES CORPORATION'S MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR BREACH OF CONTRACT**

Defendant, International Business Machines Corporation ("IBM"), moves to dismiss the state law breach of contract claim brought by Plaintiffs, James Bowman ("Bowman") as next friend of Jameel Bowman ("J.B."), and Melissa Gibson ("Gibson") as next friend for Courtney Anderson ("Anderson") (collectively, "Plaintiffs"), under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim

1

upon which relief can be granted. For the reasons set forth below, IBM's Motion is **GRANTED**.

I.  Background

The Family and Social Services Administration ("FSSA") of the State of Indiana administers the State's Medicaid program. (Complaint ¶ 4). In December 2006, IBM entered into a Master Services Agreement (the "MSA") with the FSSA and assumed the overall management of the eligibility determination process. (*Id.* ¶¶ 6-7). IBM then delegated to other contractors, primarily ACS Human Services, LLC ("ACS"), most of the day-to-day responsibilities of working with beneficiaries to determine their eligibility and process their appeals. (*Id.* ¶¶ 7-8). In turn, the FSSA transitioned 1,500 state employees into the employ of IBM and its sub-contractors. (*Id.* ¶ 9). The FSSA retained final authority to approve or disapprove eligibility; however, it was dependent upon the fact-gathering, computer entries, and recommendations of the IBM Coalition staff when making correct determinations on whether to start, stop, or change Medicaid coverage for an individual. (*Id.* ¶ 10). The sub-contractors represented themselves as the FSSA to the public by mediating virtually all communications between beneficiaries and the FSSA; displaying the FSSA's signage and official seal; using the FSSA's letterhead; and identifying themselves as representatives of the FSSA to beneficiaries during telephone calls. (*Id.* ¶¶ 10-15).

In March 2009, the State of Indiana notified IBM that IBM's management through its subcontractors of the functions critical to eligibility determinations was grossly

deficient. (*Id.* ¶ 16). Accordingly, the State terminated the MSA with IBM seven years before its expiration, and the parties have sued each other over the termination. (*Id.*). After the termination, the FSSA established direct contracts with many of the former sub-contractors, which continued carrying out their previously delegated functions. (*Id.* ¶ 17).

During the life of the MSA, a Medicaid beneficiary's due process rights included the right to have the benefits continue while the appeal of a proposed termination of his or her benefits is pending. (*Id.* ¶ 19). Also, before terminating benefits Defendants had a duty to assess whether a recipient who no longer qualified under one Medicaid category might qualify under another category. (*Id.* ¶ 26). When a timely request for an appeal of a proposed termination or reduction of benefits was made, Defendants were responsible for assuring that all appropriate steps were taken to maintain Medicaid coverage for the individual or family without interruption until the appeals office could hold a fair hearing. (*Id.* ¶ 24).

Plaintiffs claim to have been denied their due process rights as Medicaid beneficiaries. Anderson had received Medicaid benefits since shortly after her birth; however, her Medicaid disability application was denied in May 2009. (*Id.* ¶¶ 39, 44). On Anderson's behalf, Gibson filed a timely appeal with the FSSA that same month. (*Id.* ¶ 45). In June 2009, the sub-contractors re-assessed Anderson's Medicaid eligibility and processed her case for closure, despite the pending appeal. (*Id.* ¶ 46). Gibson filed another appeal, yet, on July 1, 2009, Defendants submitted Anderson's case for termination. (*Id.* ¶¶ 47-48). Anderson did not receive Medicaid benefits from July 1,

2009, through July 15, 2009, when they were reinstated pending her appeal hearing. (*Id.* ¶¶ 50-51).

J.B. also received Medicaid benefits through the FSSA. (*Id.* ¶¶ 58-59). After his annual telephone interview with an FSSA sub-contractor to determine his ongoing Medicaid eligibility in April 2009, J.B. and Bowman received letters stating that their Medicaid benefits would be discontinued as of May 31, 2009. (*Id.* ¶ 63). Although Bowman filed an appeal on May 27, 2009, J.B.'s and his family's Medicaid benefits were terminated on June 1, 2009. (*Id.* ¶¶ 65-66). Their benefits were not reinstated until December 2009. (*Id.* ¶ 67).

In the Complaint, Plaintiffs claim that they are beneficiaries of Medicaid, and therefore by implication are intended beneficiaries of the contractual agreements between and among Defendants and the FSSA. (*Id.* ¶ 84(3)). According to Plaintiffs, the harms suffered by the deprivation of their Medicaid benefits are precisely the harms that Defendants undertook to prevent under the contracts. (*Id.* ¶ 84(3)). Plaintiffs request compensatory damages for the deprivation of their Medicaid benefits as a result of Defendants' violations. (*Id.* at Prayer for Relief ¶ 3). IBM filed a Motion to Dismiss under Rule 12(b)(6), claiming that Plaintiffs are not parties to, or third-party beneficiaries of, the MSA between IBM and the FSSA; therefore, Plaintiffs have no rights under the MSA and have failed to state a claim. (IBM's Motion to Dismiss ("Motion") 1-2). Because Plaintiffs' federal claims give the court original federal question jurisdiction under 28 U.S.C. § 1331, the court has supplemental jurisdiction over Plaintiffs' state law

breach of contract claim pursuant to 28 U.S.C. § 1367(a).

## II. Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of claims for "failure to state a claim upon which relief may be granted." FED.R.CIV.P. 12(b)(6). A complaint need not make detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but it must contain more than labels and conclusions or a formalistic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must treat the factual allegations in the complaint as true, construe the allegations liberally, and draw all reasonable inferences in the plaintiff's favor. *See Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005). Accordingly, the facts outlined above are accepted as Plaintiffs allege them.

## III. Discussion

IBM contends that Plaintiffs are neither a party nor a third-party beneficiary to the MSA; therefore, they have no rights under the MSA, including the right to sue for breach. Plaintiffs do not claim that they are parties to the MSA; rather, they argue that they are third-party beneficiaries to which Defendants owe certain duties. Thus, Plaintiffs believe that they have a right to sue under the MSA if those duties are breached.

Under Indiana law, generally only parties to a contract have rights under the contract.[1] *Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 561 (7th Cir. 2002) (citing *OEC-*

---

[1] The parties appear to agree that Indiana law applies to the breach of contract claim, considering they raise no choice of law issues and briefed the claim using Indiana law; accordingly, the court applies Indiana law. *Norwood Promotional Products, LLC v. Kustomkoozies, LLC*, 2011 WL 6415537, at *n.6

*Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314-15 (Ind. 1996)). However, a non-party, also referred to as a third party, may enforce the contract by demonstrating that the parties intended to protect the third party via the imposition of a duty in its favor. *Id.* (citation omitted). In other words, a third-party beneficiary contract is formed when (1) the parties to the contract intend to benefit a third party, (2) the contract imposes a duty on one of the parties in favor of the third party, and (3) the performance of the terms of the contract directly benefits the third party. *Id.* (citing *Kiltz v. Kiltz*, 708 N.E.2d 600, 602 (Ind.Ct.App. 1999)). The controlling factor is the intent to benefit the third party. *Luhnow v. Horn*, 760 N.E.2d 621, 628 (Ind.Ct.App. 2001) (citation omitted).

Plaintiffs and IBM disagree on whether the contract reveals an intent to benefit a third party. IBM cites Section 21.6 of the MSA to support its contention that the parties did not intend that Plaintiffs be third-party beneficiaries:

> *No Third-Party Beneficiaries*. Other than the indemnity rights under Article 17, (I) nothing contained in this Agreement is intended or shall be construed to confer upon any person or entity (other than the Parties hereto) any rights, benefits or remedies of any kind or character whatsoever, and (ii) ***no person or entity shall be deemed a third-party beneficiary under or by reason of this Agreement***.

(IBM's Ex. A ("MSA") § 21.6) (emphasis added). According to IBM, such a clause is enforceable and acts as an unambiguous expression of the parties' lack of intent to benefit a third party. While Plaintiffs acknowledge the "no third-party beneficiaries" clause, they

---

(S.D.Ind. Dec. 21, 2011) (citing *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995)).

contend that Section 21.6 is not the only indication of the parties' intent to benefit a third party. Plaintiffs believe that other provisions of the MSA are at odds with Section 21.6. For example, the preamble notes the State's responsibility to provide Medicaid services to eligible persons, and the stated objectives of the MSA are "(I) to provide accurate and timely eligibility determinations for individuals and families who qualify for public assistance," and "(ii) to improve the availability, quality and reliability of the services being provided to Clients." (MSA Preamble, § 1.1(1)). Plaintiffs claim that these provisions cannot be reconciled with Section 21.6, creating an ambiguity that requires the admission of parole evidence in order to determine the parties' intent.

If a contract is unambiguous, the court will "give effect to the intentions of the parties as expressed in the four corners of the document." *Evan v. Poe & Assoc., Inc.*, 873 N.E.2d 92, 98 (Ind.Ct.App. 2007) (internal citations and quotations omitted). A controversy between the parties concerning the proper interpretation of contract terms does not necessarily indicate that the terms are ambiguous. *Kiltz*, 708 N.E.2d at 602. When interpreting a contract, the court must read the contract as a whole and accept an interpretation that reconciles its provisions. *OEC-Diasonics, Inc.*, 674 N.E.2d 1315. Additionally, the court should make every effort to avoid an interpretation that renders any words, phrases, or terms ineffective or meaningless. *Indiana Gaming Comp., L.P. v. Blevins*, 724 N.E.2d 274, 278 (Ind.Ct.App. 2000) (citation omitted). All provisions in the contract are presumably there for a purpose, and the court should reconcile seemingly conflicting provisions so as to give effect to all provisions, if possible. *Id.* (citation

7

omitted). Generally, under the parol evidence rule, extrinsic evidence may not be admitted as a way to add to, vary, or explain the terms of a contract; however, this rule does not apply under the "stranger to the contract" rule. *Evan*, 873 N.E.2d at 101. In other words, under certain circumstances parol evidence may be admitted to explain the terms of a written instrument if the controversy is between a third party and one of the parties to the contract. *Id.*

Indiana courts agree with IBM that "no third-party beneficiaries" clauses explicitly and unambiguously represent an intent by the parties to disallow a suit by third parties. *Blevins*, 724 N.E.2d at 279. In *Blevins*, the City of Lawrenceburg and Indiana Gaming Company, L.P. ("Indiana Gaming"), entered into a contract, which included guidelines for workers' wages as well as a clause stating that there shall be no third-party beneficiaries to the agreement. *Id.* at 276. Alleging they were not paid according to the wage guidelines in the agreement, workers sued Indiana Gaming for breach of contract. *Id.* The workers claimed that despite the "no third-party beneficiaries" clause, the contract granted them certain wage rights, making them intended third-party beneficiaries. *Id.* at 277. The court found that the contract clearly precluded the workers from being third-party beneficiaries, and that allowing the workers to enforce the section regarding wage rights would render the "no third-party beneficiaries" clause meaningless. *Id.* at 278-79. The court held that the provisions could be reconciled in that the wages rights section does not render the "no third-party beneficiaries" section meaningless, but merely limits the enforcement of those rights to the parties to the contract. *Id.* at 279.

Plaintiffs rely on *Deckard v. Gen. Motors Corp.* to support their contention that granting IBM's motion would be premature, because extrinsic evidence is needed to determine the intent of the parties. 307 F.3d 556 (7th Cir. 2002). Following an automobile accident and settlement, the plaintiffs in *Deckard* signed agreements releasing the insurance company and "all other persons, firms or corporations" from any and all claims as a result of the accident. *Id.* at 559. Despite the decisions of several Indiana appellate courts upholding such language as plain and unambiguous, the Seventh Circuit found that the release of the plaintiffs' claim for personal injuries may not have been within the contemplation of the parties. *Id.* at 564-65. The Seventh Circuit further noted that Indiana recognizes the "stranger to the contract" exception to the parol evidence rule, meaning that the parol evidence rule does not apply to third parties to the contract. *Id.* at 563. Accordingly, the Seventh Circuit held that even though the language in the contract was clear and unambiguous, extrinsic evidence regarding the intent of the parties to release GM was admissible under the "stranger to the contract" exception to the parol evidence rule. *Id.* at 565.

Five years later, an Indiana appellate court disagreed with *Deckard* and held that "in the context of a controversy that exists between a third party and one of the parties to the instrument, when a release is unambiguous [the court] need not look at any other evidence to determine the parties' intent." *Evan*, 873 N.E.2d at 104 (citing *OEC-Diasonics*, 674 N.E.2d at 1314). Similar to the plaintiff in *Deckard*, the Evans signed an agreement with their insurance company releasing the insurance company and "all other

persons, firms and corporations, from any and all claims" arising out of a fire loss. *Id.* at 96. After signing the release agreement, the Evans filed a complaint for negligence against their insurance agency and agent, who were not parties to the release agreement. *Id.* at 97. The court affirmed a grant of summary judgment in favor of the defendants on the grounds that the release was unambiguous, and thus, parol evidence was not admissible to determine the intent of the parties to the agreement. *Id.* at 105.

Although the court is not bound by the analysis of an intermediate Indiana appellate court, it is required to give it "great weight" in the absence of prevailing authority from the state's highest court. *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002); *Bontrager v. Ind. Fam. and Soc. Servs. Admin.*, 2011 WL 5386646, at *8. Consequently, the court is persuaded by the Indiana appellate court's rejection of *Deckard*. The clause in the MSA is an unambiguous expression of the parties' intent not to create third-party beneficiaries to the MSA. Other provisions of the MSA mention duties of the parties to the public regarding Medicaid services; however, as the court demonstrated in *Blevins*, the clauses can be reconciled. The "no third-party beneficiaries" clause of the MSA merely limits the enforcement of Medicaid recipients' rights to the actual parties to the MSA. *See Blevins*, 724 N.E.2d at 279. Because the MSA is clear and unambiguous, the "stranger to the contract" exception to the parol evidence rule does not apply and extrinsic evidence is inadmissible. *See Evan*, 873 N.E.2d at 105. Accordingly, Plaintiffs are not third-party beneficiaries to the MSA; therefore, they do not have the right to sue under the MSA for breach of contract.

## IV. Conclusion

For the reasons set forth above, IBM's Motion to Dismiss (Docket # 41) is **GRANTED**.

**SO ORDERED** this 21st day of February 2012.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic copies to:

Kevin W. Betz
BETZ & BLEVINS
kbetz@betzadvocates.com

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

Craig L. Briskin
MEHRI & SKALET, PLLC
cbriskin@findjustice.com

Jenny R. Buchheit
ICE MILLER LLP
jenny.buchheit@icemiller.com

Daniel K. Burke
HOOVER HULL LLP
dburke@hooverhull.com

Aaron D. Charfoos
KIRKLAND & ELLIS LLP
aaron.charfoos@kirkland.com

Adam Clay
INDIANA ATTORNEY GENERAL
Adam.Clay@atg.in.gov

John B. Drummy
KIGHTLINGER & GRAY
jdrummy@k-glaw.com

Benjamin Conard Ellis
BETZ & BLEVINS
bellis@betzadvocates.com

Wendy Netter Epstein
KIRKLAND & ELLIS LLP
wendy.epstein@kirkland.com

Jason L. Fulk
HOOVER HULL LLP
jfulk@hooverhull.com

Andrew T. Glier
OFFICE OF THE ATTORNEY GENERAL
andrew.glier@atg.in.gov

Melanie E. Harris
ICE MILLER LLP
melanie.harris@icemiller.com

Thomas J. Henderson
HENDERSON LAW FIRM PLLC
tjh@hendersonfirm.net

Zachary D. Holmstead
KIRKLAND & ELLIS
zachary.holmstead@kirkland.com

Anna May Howard
SEVERNS & STINSON LAW FIRM
amh@severns.com

Andrew W. Hull
HOOVER HULL LLP
awhull@hooverhull.com

John F. Ittenbach
ITTENBACH JOHNSON TRETTIN & KOELLER
jfittenbach@IJTKlaw.com

Robert M. Kelso
KIGHTLINGER & GRAY
rkelso@k-glaw.com

Robert M. Koeller
ITTENBACH JOHNSON TRETTIN & KOELLER
rkoeller@ijtklaw.com

Laurie E. Martin
HOOVER HULL LLP
lmartin@hooverhull.com

Steven D. McCormick
KIRLAND & ELLIS LLP
smccormick@kirkland.com

Martin L. Roth
KIRKLAND & ELLIS LLP
martin.roth@kirkland.com

Scott Richard Severns
SEVERNS & ASSOCIATES
sseverns@severns.com

Anne M. Sidrys
KIRKLAND & ELLIS LLP
anne.sidrys@kirkland.com

Steven A. Skalet
MEHRI & SKALET, PLLC
sskalet@findjustice.com

Diana M. Watral
KIRKLAND & ELLIS LLP
diana.watral@kirkland.com

L. Alan Whaley
ICE MILLER LLP
whaley@icemiller.com

Michael Wroblewski
KIGHTLINGER & GRAY
mwroblewski@k-glaw.com

Michael A. Wukmer
ICE MILLER LLP
michael.wukmer@icemiller.com