UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES BOWMAN, as next friend for J.B., et al., | ) ) ) |
| Plaintiffs, | ) Case No. 1:11-cv-0593-RLY-TAB ) |
| vs. | ) Judge Richard L. Young ) |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, et al., | ) Magistrate Judge Tim A. Baker ) ) |
| Defendants. | ) |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO STRIKE REPLY REPORTS OF DR. RICHARD GOLDSTEIN AND DR. MELISSA THOMASSON

This Court has held that, where a case management plan does not provide a deadline for submitting rebuttal expert reports, they must be served "within 30 days of the other party's disclosure." *McAtee v. Buca Rests., Inc.*, 2011 WL 4861867, at *2 (S.D. Ind. Oct. 13, 2011) (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)). Plaintiffs chose to disregard this clear deadline. Rather, in response to defendants' *Daubert* motions, plaintiffs served untimely expert "reply" reports from Dr. Richard Goldstein and Dr. Melissa Thomasson more than two months after defendants disclosed their expert reports. In addition to being untimely, these reply reports improperly seek to offer new opinions that should have been disclosed in the first reports.

These reply reports are subject to automatic exclusion because plaintiffs' violations of Rule 26 are neither justified nor harmless. *See, e.g.*, *Tribble v. Evangelides*, 670 F.3d 753, 758 (7th Cir. 2012). Plaintiffs have no justification for their violation of Rule 26's clear deadline. Moreover, plaintiffs' disregard of the schedule has caused defendants prejudice. For the past year and a half, this case has revolved around plaintiffs' motion for class certification. Had

plaintiffs complied with Rule 26, defendants would have received these new reports well before filing their opposition to class certification. Now that defendants' cards are all on the table, plaintiffs want to change the expert record. Plaintiffs have already indicated that they plan to rely on these reports in their reply in support of class certification. This Court should reject this improper attempt to subvert the schedule at defendants' expense and strike the reply reports.

## BACKGROUND

I.  **PLAINTIFFS' EXPERT REPORTS.**

    A.  **Dr. Richard Goldstein's First Report.**

On May 14, plaintiffs served the report of Dr. Richard Goldstein, who proposed a single, multi-step methodology for using "relevant electronic databases" to identify potential class members. (Ex. A, 5/14/12 Report of R. Goldstein 1–5; Ex. B, 6/21/12 Goldstein Dep. 60–68, 74–79) The only computer systems his report identified as relevant were Indiana's Medicaid systems—ICES, WFMS/FACTS, and the Hearing and Appeals system. (*See* Goldstein Report 1–5) At his deposition, Dr. Goldstein was specifically asked how he planned to implement each step and part of his methodology. Without exception, he responded that he would use data extracts from Indiana's Medicaid computer systems. (Goldstein Dep. 68, 78–79, 81–90, 96–99, 102–03, 105–06, 115–18, 120–23, 131–32) He did not mention any other system.

It is undisputed that there is a "vast array" of circumstances that, in plaintiffs' words, "would eliminate individuals from the class." (9/18/12 Pls. Resp. to Mot. to Exclude Dr. Goldstein 10 (Doc. No. 262)) Thus, "on the advice of [plaintiffs'] attorneys," Dr. Goldstein attempted to "filter out certain cases": two groups of individuals who were categorically not entitled to continuing benefits—those who requested not to receive such benefits and those who withdrew their appeals—and cases assigned to a State employee in a so-called as-is office. (Goldstein Report 5; Goldstein Dep. 63–64))

At his deposition, Dr. Goldstein confirmed that these were the only three filters in his methodology. (Goldstein Dep. 102–03) He also admitted that all three filters "were prepared by plaintiffs' counsel"; that he "d[id] not know all of the circumstances in which a beneficiary who files a timely appeal is nonetheless ineligible for continuing benefits"; and that he had not "developed a methodology that accounts for all of the circumstances in which a beneficiary who files a timely appeal is nonetheless ineligible for continuing benefits." (*Id.* at 103–04)

### B. Dr. Melissa Thomasson's First Report.

On May 14, plaintiffs also served Dr. Thomasson's expert report. (Ex. C, 5/14/12 Report of M. Thomasson) She gave one opinion: that a "valid method exists to quantify economic damages [resulting from termination of Medicaid] on a non-individualized basis." (*Id.* at 7) The sole basis for Dr. Thomasson's damages calculation was "the average per person expenditure of remaining, individuals covered under Medicaid over the time period in question." (*Id.* at 11)

At her deposition, Dr. Thomasson admitted that her methodology failed to account for the damages of a number of putative class members, including those who had healthcare coverage in addition to Medicaid, such as Medicare; those who paid a monthly premium for Medicaid coverage; and those who paid a monthly spend-down (deductible) as part of their Medicaid coverage. (Ex. D, Thomasson Dep. 115–117, 210–12, 214–15)

## II. DEFENDANTS' EXPERT REPORTS.

### A. Expert Report of Dr. Sumanth Addanki.

IBM served the expert report of Dr. Sumanth Addanki on July 6, 2012. (Ex. E, 7/6/12 Report of S. Addanki) Dr. Addanki identified numerous flaws in Dr. Goldstein's analysis, including that Dr. Goldstein's methodology "requires a detailed, subjective inquiry into the facts surrounding each individual's situation," including the "interpretation of caseworker notes and appeal requests"; that Dr. Goldstein "does not know whether he can actually implement his

3

methodology and does not know whether the extracts he seeks are even available"; that third-party witnesses "confirmed that individualized, subjective inquiry would be necessary to determine whether any particular beneficiary's benefits had been wrongly discontinued" and that no report or extract can do this; and that Dr. Goldstein "has not analyzed the potential error rates for any part of his methodology or for the methodology as a whole." (*Id.* at 8–10)

Dr. Addanki also concluded that Dr. Thomasson's methodology "would award damages unrelated to actual injury" and that, "given variations among the proposed class, there is no economically valid way to calculate class damages on a group basis." (*Id.* at 3, 17)

### B. Expert Report of Dr. John Johnson, IV.

On July 6, ACS served the expert report of Dr. John H. Johnson, IV. (Ex. F, 7/6/12 Report of J. Johnson) Dr. Johnson concluded that Dr. Thomasson's opinion is based on an *ex ante* hypothesis rather than "an *ex post* determination of [] actual harm," improperly assumes that "any damages are directly proportional to the duration of the disruption [in Medicaid coverage]," and ignores that "some class members likely suffered no damages." (*Id.* at 4–5, 18–23)

### III. DEFENDANTS' *DAUBERT* MOTION AND OPPOSITION TO CLASS CERTIFICATION.

Pursuant to the case management plan, defendants filed their opposition to plaintiffs' motion for class certification on August 17. (Doc. No. 253) This response repeatedly cites the reports and depositions of plaintiffs' two experts. (*E.g.*, *id.* at 12–14, 16, 18, 24, 28, 30–32, 34)

That same day, defendants moved to exclude Dr. Goldstein under *Daubert*, based in part on flaws identified by Dr. Addanki. (Doc. No. 248) Defendants also cited Dr. Goldstein's unfamiliarity with any computer system that is "close" to Indiana's systems, and the fact that key portions of his analysis were prepared by plaintiffs' counsel. (*Id.* at 11–13) In addition, defendants moved to exclude Dr. Thomasson, as her methodology does not "fit" the legal standard for damages and her methodology is unreliable. (Doc. No. 245)

4

## IV.   PLAINTIFFS' "REPLY" REPORTS.

### A.   Dr. Goldstein's Reply Report.

On September 18, over 125 days after plaintiffs served Dr. Goldstein's first report and over 70 days after defendants served Dr. Addanki's report, plaintiffs served Dr. Goldstein's "reply" report as an exhibit to support their *Daubert* response. (Ex. G, 8/17/12 Reply Report of Richard Goldstein)

Dr. Goldstein states that his second report was meant to reply to Dr. Addanki and the defendants' *Daubert* motion to exclude Dr. Goldstein. (*Id.* at 1) The report's contents primarily respond to criticisms in Dr. Addanki's report, including whether Dr. Goldstein's methodology requires the "detailed study of each and every case" (*id.* at 1); whether interpreting caseworker notes is "necessary in every case" (*id.*); whether all necessary extracts can be created (*id.* at 3); the impact of the third-party testimony cited by Dr. Addanki (*id.* at 1); and Dr. Goldstein's failure to "project an 'error rate'" (*id.* at 2).

In addition, Dr. Goldstein's reply report seeks to offer a new methodology that does not rest on Indiana's "relevant electronic databases" but rather uses a computer program called Stata, which he asserts is "better" than Indiana's Medicaid computer systems, "has very strong matching, and reporting capabilities," and can overcome any limitations in Indiana's systems. (Goldstein Reply Report 1)  Dr. Goldstein's first report and deposition never even mentioned Stata; the only computer systems he referenced were Indiana's own Medicaid computer systems—ICES, WFMS/FACTS, and the Hearing and Appeals system. (Goldstein Report 1–5)  Dr. Goldstein also seeks to add new components and filters to his methodology.

### B.   Dr. Thomasson's Reply Report.

Dr. Thomasson also served what she describes as a "reply" report on September 18. (Ex. H, 9/18/12 Reply Report of M. Thomasson)  Unlike Dr. Goldstein, Dr. Thomasson characterized

5

her report solely as a response to defendants' experts: "In this Reply Report, I respond to the arguments raised by Defendants' experts, Drs. John Johnson and Sumanth Addanki." (*Id.* at 1) In addition, Dr. Thomasson's second report includes an entirely new opinion that there health insurance has an "intrinsic value" and that insurers "are able to charge more than the actuarial value only because people value the reduction in risk." (*Id.* at 5–6)

## ARGUMENT

### I.   PLAINTIFFS' EXPERTS' "REPLY" REPORTS SHOULD BE EXCLUDED.

#### A.   Plaintiffs' New Expert Reports Are Untimely.

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) provides: "Absent a stipulation or a court order, [expert] disclosures must be made—if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), *within 30 days after the other party's disclosure*." (Emphasis added.) This Court has repeatedly held that, where a case management plan does not establish a deadline for rebuttal reports, they must be served "within 30 days after the other party's disclosure." *McAtee v. Buca Rests., Inc.*, 2011 WL 4861867, at *2 (S.D. Ind. Oct. 13, 2011); *SAMS Hotel Grp., LLC v. Environs, Inc.*, 2011 WL 2650565, at *1 (S.D. Ind. July 6, 2011); *see also Smetzer v. Newton*, 2012 WL 2064507, at *1 (N.D. Ind. June 7, 2012) (same).

The deadline in Rule 26(a)(2)(D)(ii) applies to these "reply" reports. Both Dr. Goldstein and Dr. Thomasson state that they are responding to the opinions offered by defendants' experts. Given that both reply reports were served on September 18—over 70 days after defendants' reports and over a month past Rule 26(a)'s deadline for rebuttal reports—they are untimely.

### B. The Reply Reports Impermissibly Offer New Opinions That Should Have Been Disclosed In The Experts' First Reports.

#### 1. Dr. Goldstein's reply report endorses a new methodology based on a computer program that has never been identified as relevant to this case in any way.

Dr. Goldstein's reply report should be stricken for the additional, independent reason that it seeks to offer new opinions that should have been included in his first report. Courts exclude reports nominally labeled "rebuttal" or "reply" reports if they are "offered only as additional support to an argument made in the party's case in chief. . . . The plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from any affirmative defense) must put in his evidence on the issue as part of his case in chief." *McAtee*, 2011 WL 4861867 at *2 (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 26(a)(2)(D)(ii) (permitting rebuttal reports "solely to contradict or rebut evidence on the same subject matter" offered by the other party's expert).

> The Federal Rules "do[] not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report (indeed, the lawsuit from the outset). To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify the opinions previously given."

*Allgood v. Gen. Motors Corp.*, 2007 WL 647496, at *6 (S.D. Ind. Feb. 2, 2007) (quoting *Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003)).

Here, Dr. Goldstein's report offers significant opinions that should have been included in his first report. Most egregious is the revelation that his "current plan" is to use a computer program called Stata, which according to Dr. Goldstein is "better" than Indiana's systems and can overcome any reporting or matching limitations in those systems. (Goldstein Reply Report 1) This is the first time Stata has been identified as being relevant to this case in any

way. Dr. Goldstein never even mentioned Stata in his first report or at his deposition; now he wants to base his entire methodology on its supposedly superior capabilities. Plaintiffs' attempt to withhold this central feature of Dr. Goldstein's methodology squarely violates Rule 26.

Similarly, Dr. Goldstein seeks to add additional "filters" to his methodology. As explained above, Dr. Goldstein's methodology (as contained in his report and confirmed at his deposition) included only two filters for individuals who were not entitled to continuing benefits. But his reply report adds two more filters: individuals who moved out of the State of Indiana; and individuals who died. (*Id.* at 2) Moreover, he asserts that these cases "can be isolated through ICES reason codes" without "resort to free-form notes." (*Id.*) Dr. Goldstein's first methodology never mentions reason codes; in fact, he confirmed at his deposition that, other than a case identifier, he "do[es]n't know any of the parameters or data elements of any of the data extracts that [he] needs to perform [his] proposed methodology." (Goldstein Dep. 107–08, 128)

This Court has rejected similar attempts to offer new opinions under the guise of a "supplemental" report. For example, in *Allgood*, 2007 WL 647496 at *2, plaintiffs' expert conducted a "drive-by inspection" of plaintiffs' properties and included "a few basic facts about each tract," but did not perform full market appraisals. At his deposition, the expert confirmed that he had not valuated individual properties. *Id.* The court struck the expert's subsequent attempt to "supplement" his report by inspecting each property and providing a detailed real estate valuation, holding that the new report was "merely an attempt to provide entirely new expert evidence on issues that have been in the case since the beginning." *Id.* at *2–3; *see also In re Ready-Mixed Concrete Antitrust Litigation*, 261 F.R.D. 154, 158–61 (S.D. Ind. 2009) (striking reports attached to plaintiffs' responses to defendants' *Daubert* motions because "[u]nlike Dr. Breyer's original report, which contained merely general conclusions, the Breyer

8

Reply employs a host of new detailed analyses," and "[t]he Rausser Report also devotes a major part of its analysis to new arguments in support of Plaintiffs' request for class certification")

The Federal Rules required Dr. Goldstein to disclose his *full* methodology in his first report. Identifying class members is part of plaintiffs' prima facie case in support of class certification. *E.g.*, *Oshana v. Coca-Cola Co.*, 225 F.R.D. 575 (N.D. Ill. 2005), *aff'd*, 472 F.3d 506 (7th Cir. 2006). Plaintiffs' attempt to offer a preliminary methodology, wait for defendants to file their class opposition, and then reveal Dr. Goldstein's true methodology, violates Rule 26.

### 2. Dr. Thomasson's new opinion regarding the "intrinsic" value of insurance violates Rule 26(a).

Dr. Thomasson's reply report also contains a new opinion that should have been disclosed in her first report. Her first report calculated damages based on "the average per person expenditure of remaining, individuals covered under Medicaid over the time period in question," which she characterized as the "actuarially fair premium." (Thomasson Report 10–11) At her deposition, Dr. Thomasson testified that this actuarially fair premium "is equal to the value of the insurance coverage that was withheld" and was the sole basis of her calculation: "The damages that I calculated are the value of the insurance coverage. There may be additional damages, but I was not asked to calculate those and have not formed an opinion about that." (Thomasson Dep. 132–33) She repeatedly confirmed that she had no "opinion as to whether these class members were injured in more than monetary ways." (*Id.* at 90, 123) Plaintiffs' counsel also confirmed any non-monetary value associated with healthcare coverage falls outside Dr. Thomasson's expertise:

| | |
|---|---|
| Ms. Okenfuss: | What area did I go in to that was beyond her area of expertise? I don't understand. |
| Mr. Skalet: | You're asking her psychologically to tell you whether she can tell you whether every person in a particular group |

9

|||
|---|---|
| | whom she has already said she doesn't know anything about, what kinds of decisions they would make. |
| Ms. Okenfuss: | You're saying it's beyond her area of expertise to tell you what individuals in the class may or may not be considering with respect to health care insurance? |
| Mr. Skalet: | Yes, of course. It's highly individualized. [*Id.* at 151–52] |

But Dr. Thomasson's reply report offers a new opinion on precisely that topic. She now argues that "people have insurance because the insurance itself has intrinsic value associated with reducing risk." (Thomasson Reply Report 5) This new opinion contradicts her testimony that (1) her methodology equated the value of insurance with the actuarially fair premium, defined solely as the average per-person Medicaid expenditure; and (2) she has no opinion regarding any other types of damages. Plaintiffs' attempt to change Dr. Thomasson's fundamental methodology and squeeze in a new damages opinion violates Rule 26(a).

### C.   Plaintiffs' Violations of Rule 26(a) Are Neither Justified Nor Harmless.

Because these reports violate Rule 26(a), "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003); *see also Tribble v. Evangelides*, 670 F.3d 753, 758 (7th Cir. 2012) (applying this rule to expert evidence); *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641–43 (7th Cir. 2008) (same). "There is nothing 'extreme' about the exclusion remedy of Rule 37(c)(1). The rule presumes that exclusion is the appropriate remedy, unless the proponent can show that the failure was either justified or harmless." *Allgood*, 2007 WL 647496 at *6. This rule is not limited to trials: if an expert report is excluded, "the offending party is not allowed to introduce the expert witness's testimony as 'evidence on a motion, at a hearing, or at a trial.'" *Ciomber*, 527 F.3d at 641 (quoting Fed. R. Civ. P. 37(c)(1)); *see also Johnson v. Allstate Ins. Co.*, 2011 WL 3476611, at *6–8 (S.D. Ill.

Aug. 9, 2011) (excluding expert offered in support of class certification for violation of Rule 26(a)); *In re FedEx Ground Package Sys., Inc., Emp't Practices Litig.*, 2007 WL 2128164, at *3–5 (N.D. Ind. July 23, 2007) (striking materials attached to response to motion for class certification for violation of Rule 26(a)); *Beesley v. Int'l Paper Co.*, 2012 WL 195582 (S.D. Ill. Jan. 23, 2012) (striking expert report from summary judgment record for Rule 26(a) violation).

Plaintiffs' failure to comply with Rule 26 is neither justified nor harmless. Defendants are not aware of any justification for plaintiffs' delay. In fact, plaintiffs were well aware of the deficiencies in their experts' analyses even before defendants served their expert reports in July. For example, at Dr. Goldstein's deposition in June, Dr. Goldstein admitted that during lunch he and counsel had already started discussing potential challenges to Dr. Goldstein's testimony:

> Q. What else did you talk about?
>
> A. I think they were trying to determine the goal of this morning's questions and whether it was to show that I'm not an expert.
>
> Q. And what was Mr. Severns' feeling on that topic?
>
> A. I think he thought that was probably at least part of the goal. [Goldstein Dep. 138–139]

And the deadline in Rule 26(a)(2)(D)(ii) is clear: rebuttal reports must be submitted "within 30 days after the other party's disclosure." There is no reference to *Daubert* motions, class certification hearings, trials, or any other event. The deadline is 30 days after the other party's expert report, period. Plaintiffs have no justification for ignoring this explicit deadline.

Plaintiffs likewise have no justification for holding back Dr. Goldstein's new opinions. Dr. Goldstein admits that he has done work similar to that suggested in his reply report "many times before." (Goldstein Reply Report 3) And the third-party testimony Dr. Goldstein cites in support of his two new filters was given well before he served his first report. Plaintiffs have no justifiable basis for withholding his plan to use Stata, or the other elements of his new

methodology, until this late stage of litigation. The same is true of Dr. Thomasson's new opinion.

Plaintiffs' untimely filing is not harmless; in fact, it is highly prejudicial. Had plaintiffs complied with Rule 26, defendants would have received these reply reports before defendants' opposition to class certification was due. Instead, plaintiffs withheld the reply reports until defendants had already laid out their entire argument. *See, e.g.*, *Nelson v. IPALCO Enters., Inc.*, 2005 WL 1924332 (S.D. Ind. Aug. 11, 2005) (striking an expert report for failure to comply with Rule 26(a) because plaintiffs' "disregard of the schedule and the orderly development of this case cannot be deemed harmless because it gave the plaintiffs the opportunity to wait for defendants to show their expert cards"). The consequence of such gamesmanship is exclusion.

The prejudice is easy to see from even one example. Dr. Thomasson initially testified that her class-wide damages did not take into consideration putative class members who had health coverage in addition to Medicaid; who paid a monthly premium for Medicaid coverage; or who had a monthly spend-down (similar to a deductible) before Medicaid coverage kicked in. (Thomasson Dep. 115–117, 210–212, 214–215) Defendants' experts identified this shortcoming as one of the reasons individualized damages inquiries are necessary. (Addanki Report 19, 20–23; Johnson Report 17–18) Having received no rebuttal within the 30-day deadline, defendants' opposition to class certification argued that Dr. Thomasson's methodology does not apply to all members of the proposed class. (Doc. No. 253 at 15–16) Only after defendants could no longer respond did plaintiffs decide to rebut Dr. Addanki's and Dr. Johnson's prior opinions.

Dr. Goldstein's new opinions only magnify this prejudice, as defendants based their approach on what turned out to be only a prototype of Dr. Goldstein's current methodology. Withholding Stata, the new centerpiece of Dr. Goldstein's methodology, until after defendants'

12

brief was filed gave plaintiffs an unfair tactical advantage at defendants' expense. Similarly, allowing Dr. Thomasson to offer her new opinion regarding the "intrinsic" value of insurance—after she expressly disclaimed any such opinion at her deposition—rewards plaintiffs for disregarding their duty to disclose all opinions in Dr. Thomasson's first report.

Moreover, the deadline for plaintiffs' reply in support of their motion for class certification has already been extended twice. As was true in *Nelson*, "indulgence of plaintiffs' tactics would contribute to further delay, expense, and complication in an already long, expensive, and complicated lawsuit." 2005 WL 1924332 at *8.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court strike the reply reports of Dr. Goldstein and Dr. Thomasson, strike all references to these reports from the record—including within plaintiffs' responses to defendants' motions to exclude Dr. Goldstein and Dr. Thomasson—and prohibit plaintiffs from using these reports in any manner.

Dated:  October 5, 2012

*s/ Melanie E. Harris*
L. Alan Whaley (#1799-49)
Michael A. Wukmer (#2223-49)
Judy S. Okenfuss (#16157-49)
Melanie E. Harris (#22994-49)
Jenny R. Buchheit  (#26653-49A)
ICE MILLER LLP
One America Square, Suite 2900
Indianapolis, Indiana 46282-0200

*Attorneys for Defendant ACS Human Services*


*s/ John B. Drummy*
John B. Drummy
Michael Wroblewski
Robert M. Kelso
KIGHTLINGER & GRAY, LLP
Market Square Center, Suite 600
151 North Delaware Street
Indianapolis, Indiana 46204

*Attorneys for Defendant Arbor E&T, LLC*

Respectfully submitted,

*s/ Zachary D. Holmstead*
Andrew W. Hull (#11218-49)
Jason L. Fulk (#24890-53)
HOOVER HULL LLP
111 Monument Circle, Suite 4400
Indianapolis, IN 46244-0989

Steven D. McCormick, P.C.
Anne M. Sidrys, P.C.
Martin L. Roth
Zachary D. Holmstead
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654

*Attorneys for Defendant International Business Machines Corporation*


*s/ John F. Ittenbach*
Robert M. Koeller
John F. Ittenbach
ITTENBACH JOHNSON TRETTIN & KOELLER
6350 North Shadeland, Suite 4
Indianapolis, IN  46220

*Attorneys for Defendant Phoenix Data Corporation*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically on October 5, 2012.  Notice of this filing will be sent to all counsel of record via an automatic e-mail message generated by the CM/ECF system.

*s/ Zachary D. Holmstead*
Zachary D. Holmstead