UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES BOWMAN, as next of friend for J.B., et al., | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:11-cv-0593-RLY-TAB |
| | ) | |
| INTERNATIONAL BUSINESS MACHINE CORPORATION, et al., | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTION TO STRIKE**

**I.      Introduction**

Defendants move to strike two expert reply reports submitted by Plaintiffs in response to

Defendants' opposition to class certification.  Plaintiffs served these reply reports after

Defendants' opposition to class certification raised serious concerns with Plaintiffs' experts'

methodology for identifying class members and calculating damages.  Defendants assert these

reply reports should be stricken because they are untimely and contain improper rebuttal.  For

the reasons below, Defendants' arguments are well taken and their motion to strike [Docket No.

274] is therefore granted.

**II.      Background**

Plaintiffs are seeking damages on behalf of themselves and other Medicaid recipients

who allegedly had their benefits unlawfully interrupted or terminated.  [Docket No. 1.]  In

preparation for filing a motion for class certification, Plaintiffs served Defendants with two

expert reports on May 14, 2012, from Drs. Goldstein and Thomasson.  [Docket Nos. 275-1, 275-

3.]  Dr. Goldstein's report proposes a methodology for identifying class members based on computer databases that include ICES, WFMS/FACTS, and a hearing and appeals system.  [*Id.*] Dr. Thomasson's report sets forth a proposed methodology for calculating damages by using the premium Medicaid enrollees would have paid for coverage, which is calculated by dividing the total expenditures by the number of persons eligible for Medicaid.  [Docket No. 275-3 at 12.] On June 8, 2012, Plaintiffs moved for class certification and relied upon the opinions of Drs. Goldstein and Thomasson to show that class members could adequately be identified and damages calculated.  [Docket No. 203 at 26–29.]

On July 6, 2012, Defendants served Plaintiffs with expert reports from Drs. Addanki and Johnson.  [Docket Nos. 275-1, 275-2.]  Dr. Addanki claims that Dr. Goldstein's analysis is flawed in several respects, including Dr. Goldstein's identification method that "requires a detailed, subjective inquiry into the facts surrounding each individual situation" and "interpretation of caseworker notes and appeal requests."  [Docket No. 275 at 3.]  Dr. Addanki also criticized Dr. Thomasson's methodology, stating that "given variations among the proposed class, there is no economically valid way to calculate class damages."  [*Id.* at 4.]  Dr. Johnson criticized Dr. Thomasson's opinion as an *ex ante* hypothesis rather than "an *ex post* determination of actual harm," which improperly assumes "any damages are directly proportional to the duration of the disruption" in Medicaid coverage.  [*Id.*]  Defendants relied upon Dr. Addanki's and Dr. Johnson's opinions in their opposition to class certification. [Docket No. 250.]

On September 18, 2012, over 125 days after Plaintiffs initially served their expert reports and over 70 days after Defendants served Dr. Addanki's and Dr. Johnson's reports, Plaintiffs

2

served Defendants with "reply reports" from Drs. Goldstein and Thomasson that purportedly respond to Defendants' opposition to certification.  [Docket No. 275-7, 275-8.]  Dr. Goldstein's reply report asserts that "he will use better reporting software" and his "current plan is to use software called Stata."  [Docket No. 275-7 at 2.]  Dr. Thomasson's reply report states that she will also calculate damages based on the "intrinsic value of health insurance."  [Docket No. 275-8 at 4.]  Defendants move to strike these reports in their entirety and argue that they are untimely and constitute improper rebuttal.

**III.    Discussion**

    *A.    Timeliness*

Defendants contend that Plaintiffs' reply reports are untimely under Federal Rule of Civil Procedure 26(a)(2)(D)(ii).  Plaintiffs respond that Rule 26 does not apply to their reply reports because the reports were filed in conjunction with a motion for class certification and not an impending trial.  Rule 26(a)(2)(D) provides:

> Absent a stipulation or a court order, the disclosures must be made:
>> (i) at least 90 days before the date set for trial or for the case to be ready for trial; or
>> (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

Plaintiffs argue that the 30-day provision cannot be read in isolation.  According to Plaintiffs, the "expert report is due either 90 days before trial, or an additional 30 days is allowed if the testimony is offered in rebuttal."  [Docket No. 276 at 4.]  In Plaintiffs' view, Rule 26's deadlines are linked to the trial date and do not apply to motion practice.  [*Id.*]  Plaintiffs also note that the cases Defendants cite, *McAtee v. Buca Restaurants, Inc.*, No. 1:10-CV-1090-SEB-DKL, 2011 WL 4861867, at *2 (S.D. Ind. Oct. 13, 2011); *Sams Hotel Group, LLC v. Environs,*

3

*Inc.*, No. 1:09-CV-0930-TWP-TAB, 2011 WL 2650565, at *1 (S.D. Ind. July 6, 2011), do not apply Rule 26 in the context of a motion for class certification. *But see Dixon v. Certainteed Corp.*, 168 F.R.D. 51, 54 (D. Kan. 1996) ("Neither the purpose of the rule nor its explicit language requires an interpretation that reports of rebuttal experts must be provided within 30 days of an original disclosure, even though trial is more than 90 days away.").

Defendants respond by pointing out that *Dixon* and other cases cited by Plaintiffs [*See* Docket No. 276 at 5 n.1] are not from the Seventh Circuit and, contrary to Rule 26(a)(2)(D), such a distinction would eliminate any default deadline for filing or disclosing rebuttal reports related to motion practice. [Docket No. 277 at 2.] Defendants' argument is well taken. Without a default deadline for rebuttal reports, the parties could use rebuttal reports as tactical weapons that could unduly prejudice an opponent and interfere with a just, speedy, and inexpensive determination of the issues. *See* Fed. R. Civ. P. 26 Advisory Committee Note (1983). For example, a party could wait to serve a rebuttal report after the opposing party already deposed the experts and discovery closed, both of which Plaintiffs did in this case. Moreover, if the drafters of Rule 26(a)(2)(D) intended for the 30-day rule to only apply to impending trials there are numerous ways in which the drafters could have articulated such a limitation, including simply stating that rebuttal reports must be disclosed at least 60 days before trial. Instead, Rule 26(a)(2)(D) specifically states that rebuttal reports must be disclosed "within 30 days after the other party's disclosure." The 90-day requirement is merely to ensure that the initial expert report is not disclosed too close to trial and that the opposing party has sufficient time to prepare a rebuttal. *See* Fed. R. Civ. P. 26 Advisory Committee Note (1993).

The Court's interpretation of this rule is further supported by numerous cases from courts

within the Seventh Circuit and other district courts.  *See Stillwater of Crown Point Homeowner's Ass'n v. Kovich*, 820 F. Supp. 2d 859, 866–70 (N.D. Ind. 2011) (applying the 30-day rule to a rebuttal report submitted in response to a summary judgment motion); *Cason-Merenda v. Detroit Med. Ctr.*, No. 06-15601, 2010 WL 1286410, at *1–2 (E.D. Mich. Mar. 31, 2010) (excluding a rebuttal report filed five days after the 30-day deadline and on the same day as plaintiff's class motion); *In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05-1717, 2010 WL 2802271, at *1 (D. Del. Mar. 22, 2010) ("Pursuant to Fed. R. Civ. P. 26(a)(2)(C)(ii), Class Plaintiffs were required to disclose Prof. Noll as a potential rebuttal witness, absent a stipulation or court order, within 30 days after Intel's disclosure of its expert witness . . . ."); *Welch v. Eli Lilly & Co.*, No. 1:06-CV-0641-RLY-JMS, 2009 WL 700199, at *3–5 (S.D. Ind. Mar. 16, 2009) (applying the 30-day rule to a purported rebuttal report submitted in support of a motion for a proposed class action).  Additionally, Plaintiffs' citation to *In re Evanston Northwest Healthcare Corp. Antitrust Litigation*, 268 F.R.D. 56, 77 (N.D. Ill. 2010), and other cases to show that expert replies are typically filed concurrently with their respective briefs [*See* Docket No. 276 at 6] are unhelpful because they do not address whether those reply or rebuttal reports were timely filed with their respective briefs.

Moreover, Plaintiffs' interpretation of Rule 26 would come into play only absent an agreement or stipulation.  The Case Management Plan expressly invokes Rule 26's disclosure framework in the context of class certification.  Although the CMP does not specifically identify a deadline for an expert rebuttal, the CMP's imposition of Rule 26(a)(2) is sufficiently clear.[1]

---

[1]The Case Management Plan states:

December 16, 2011: Close of class fact discovery; Plaintiffs serve class expert(s) disclosures,

Thus, because the CMP invokes Rule 26(a)(2) for class certification, and because Rule 26(a)(2) applies to motion practice, Dr. Goldstein's and Dr. Thomasson's rebuttal reports—served over 70 days after Defendants served their expert reports—are untimely.

> B.   *Justified or harmless*

Plaintiffs' untimely reply reports must be stricken unless Plaintiffs can show that the violation of Rule 26 was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1); *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).  While the Court need not make explicit findings when determining if the failure was substantially justified or harmless, the Court is guided by four factors: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble v. Evangelides*, 670 F.3d 753, 670 (7th Cir. 2012); *Westefer v. Snyder*, 422 F.3d 570, 584 n.21 (7th Cir. 2005).  Based on these factors, Plaintiffs' Rule 26 violation was neither justified nor harmless.

Plaintiffs do not offer any explanation for why they were unable to comply with the 30-day deadline.  Instead, Plaintiffs argue that their violations should be ignored because the existing deadlines were strategically unfavorable to the extent that they had to submit their reply

---

if any, in accordance with Fed. R. Civ. P. 26(a)(2); Plaintiffs file motion for class certification.
February 1, 2012: Defendants serve class expert(s) disclosures, if any, in accordance with Fed. R. Civ. P. 26(a)(2).
March 16, 2012: Close of expert discovery; Defendants file opposition to class certification.
April 15, 2012: Plaintiffs file reply in support of class certification.

[Docket No. 55 at 8.]  The Court later enlarged the CMP deadlines.  [Docket Nos. 121, 147.]

reports before Defendants filed their memorandum in opposition to class certification.  [Docket No. 276 at 7.]  But as Defendants point out, "if plaintiff[s] believed that the schedule was unfair, the proper course was to request relief from the Court—not ignore the deadline and later argue that their noncompliance was justified because the schedule was unfavorable."  [Docket No. 277 at 9.]  Perhaps no request was made because Plaintiffs truly believed that Rule 26(a)(2)(D) did not apply to motions for class certification, in which case Plaintiffs did not act willfully or with bad faith.  But the CMP's explicit reference to Rule 26(a)(2) should have alerted Plaintiffs of the need to raise the issue with the Court, which Plaintiffs failed to do despite multiple status conferences addressing the CMP deadlines.  [*See* Docket Nos. 121, 147, 189.]

Plaintiffs also claim that any prejudice can be cured by filing a surreply or responding at oral argument to the expert replies [Docket No. 276 at 8], but Defendants' ability to respond to these untimely reports is limited and would cause additional delay.  As Defendants point out, "[t]his case has been pending for 18 months; expert discovery closed months ago; and plaintiffs' motion for class certification is still not fully briefed."  [Docket No. 277 at 10.]  Moreover, Plaintiffs' untimely reply reports were served after Defendants deposed Plaintiffs' experts and reopening discovery to redepose Plaintiffs' experts would create significant costs and would delay the resolution of the motion for class certification.  *See Stuhlmacher v. Home Depot USA, Inc.*, No. 2:10-CV-467, 2012 WL 5866297, at *3 (N.D. Ind. Nov. 19, 2012) ("The plaintiffs provided their supplemental report after the defendants took Dr. Conry's deposition and after the close of discovery.  It would be prejudicial to the defendants to allow Dr. Conry's supplemental report to stand without affording them an opportunity to conduct discovery and re-opening discovery would delay the resolution of this motion.").

Finally, while no trial date is set, the absence of a trial date does not necessarily render the belated expert replies harmless. *See Trinity Homes, LLC v. Ohio Cas. Ins. Co.*, No. 1:04-CV-01920-SEB-TAB, 2011 WL 2261297, at \*5 (S.D. Ind. June 8, 2011). "[T]he Court has the obligation and the right to enforce adherence to its case management plans to ensure the just, speedy, and inexpensive determination of matters brought before it." *Id.*; *see also Stuhlmacher*, 2012 WL 5866297, at \*3 ("The plaintiffs waited until after the defendants disclosed their expert, and after they took the defendants' expert's deposition to 'supplement' their own expert report to contradict the defense expert's opinion. This tactic undermines the court's authority to set forth the deadlines and order of production."). In light of the expired deadlines for expert discovery and class fact discovery which were both extended multiple times, the expense and delay associated with reopening discovery, and the fact that Plaintiffs never requested additional time to serve reply reports despite the CMP's use of Rule 26(a)(2), Plaintiffs' violation is neither substantially justified nor harmless. Defendants' motion to strike the reply reports is therefore granted.

### C.    *Improper rebuttal*

Even if the reply reports were timely served, Defendants' motion to strike would still be granted because the replies include improper rebuttal. "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of evidence offered by an adverse party." *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008). "It cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions." *Larson v. Wis. Ctr. Ltd.*, No. 10-C-446, 2012 WL 368379, at \*4 (E.D. Wis. Feb. 3, 2012). Thus, a party cannot "offer testimony under the guise of 'rebuttal' only to provide additional support for his case in

chief." *Cage v. City of Chi.*, No. 09-C-3078, 2012 WL 5557410, at *2 (N.D. Ill. Nov. 14, 2012);

*see also Trinity*, 2011 WL 2261297 at *3 ("[A]n expert report that discloses new opinions is in

no way a mere supplement to a prior report.").[2]

Dr. Goldstein's and Dr. Thomasson's reply reports improperly provide additional support

and at times completely change their methodology.  The purpose of Dr. Goldstein's expert report

is to show that putative class members subject to discontinuances or interruptions in their

Medicaid coverage can be adequately identified.  [Docket No. 203 at 33.]  Dr. Goldstein's initial

report discusses his plan to identify these Medicaid recipients by "primarily using different

computerized systems of data: ICES, WFMS/FACTS and the Hearing and Appeals system."

[Docket No. 275-1 at 2.]  Important factors for successfully identifying putative class members

involve using the appropriate filters for ICES and to use cross-referencing databases to ensure

complete results.[3]  According to Plaintiffs, Dr. Goldstein:

> can examine all terminations in the ICES database, cross-check them against all instances where an appeal request was received before the effective date associated with the termination action, but benefits were terminated. Specifically, this information is located in the "HERQ" (hearing request) screen in ICES.  Second, Dr. Goldstein explains that the ICES database is not complete nor accurate enough to identify all the cases in which timely appeal requests were received. For this reason, he identifies four additional sources of information of timely appeal requests that were not honored with continued benefits: 1) the WFMS/FACTS system, which can be searched for appeal-related documents or tasks; 2) in non-modernized counties, the Hearings and Appeals database, which formed the basis of the OV&V Reports; 3) the CLRC case notes narratives, which can be electronically searched for appeal requests; and 4) a cross-check for concurrent terminations of a recipient's

---

[2]Although Plaintiffs only argue that their reply reports are rebuttal reports [Docket No. 276 at 10–11], the Court also cites cases demonstrating that the reply reports are also improper supplementation.

[3]Defendants use the term "filters" which presumably refers to the data fields (sometimes called variables or elements) that are discussed in Dr. Goldstein's report, which include application, reporting, benefit, notice, and termination dates.  [Docket No. 275-1 at 2–3.]

household members to determine if the appeal request should have continued their benefits as well. Third, Dr. Goldstein identifies exceptional circumstances that may exist for benefits notto be maintained, and "how I would use available electronic data to narrow or eliminated manual review for exceptional cases." Id. at 4-5. Fourth, Dr. Goldstein would "measure or calculate the duration of the deprivation of Medicaid Benefits for each incident that is identified above and not excluded as an exception." He explains that this information exists in ICES.

[Docket No. 203 at 33.]  As this explanation demonstrates, Dr. Goldstein's report primarily relies on the ICES database to identify putative class members and specifies filters and cross-checking databases as a secondary basis for ensuring accurate results.

Dr. Goldstein's reply report takes a different approach.  Despite originally asserting that he "primarily [would be] using different computerized systems of data: ICES, WFMS/FACTS and the Hearing and Appeals system" [Docket No. 275-1 at 2], Dr. Goldstein now asserts that his "current plan is to use software called 'Stata.'" [Docket No. 275-7 at 2.]  Dr. Goldstein expressly acknowledges that his former approach is flawed and that he will take a different approach: "Ms. McCain clearly identifies a problem with the reporting capabilities of the software they use.  I will use better reporting software that has very strong matching, and reporting capabilities."  [Docket No. 275-7 at 2.]  But as Defendants point out, this is the first time Stata has been mentioned in this case in any way.  [Docket No. 275 at 7–8.]

While Dr. Goldstein's reply still relies on ICES but to a lesser degree, he also changes his methodology for using ICES.  Instead of Dr. Goldstein limiting his reply report to an explanation of why the original proposed filters are sufficient to identify putative class members, he offers additional filters that account for people who moved out of state or are deceased.  [Docket No. 275-7 at 2–3.]  Finally, even though Dr. Goldstein originally states that he would rely on "CLRC case notes narratives," the reply report states that certain cases can now be isolated through the

use of ICES reason codes and "do not require resort[ing] to free-form notes." [*Id.* at 3.]

Dr. Thomasson's reply report also includes improper rebuttal by changing her proposed methodology for calculating damages arising from wrongful termination of Medicaid coverage. Dr. Thomasson's initial report states that "a measure of damages incurred by Medicaid enrollees would reflect the premium they would have had to pay for their coverage." [Docket No. 275-3.] She further states that "the premium for Medicaid enrollees can be calculated by dividing total expenditures by the number of persons eligible for Medicaid . . . ." [*Id.*] The reply report, however, adds that a damage calculation should also include the "intrinsic value of health insurance." [Docket No. 275-8 at 4.] For example, Dr. Thomasson explains that by "purchasing a policy, the individual reduces risk, and is thus better off than if she/he could not get coverage (either because he/she could not afford the offered policy or because he/she is too sick to be offered a policy." [*Id.* at 4–5.]

Although Dr. Goldstein's and Dr. Thomasson's replies cover the same topics and to some extent respond to Defendants' experts, a rebuttal report must be limited to contradicting or rebutting the arguments or opinions of the opposing party's experts and cannot do so with new analyses and arguments like the reply reports do here. *See Welch v. Eli Lilly & Co.*, No. 1:06-CV-0641-RLY-JMS, 2009 WL 700199, at *5 (S.D. Ind. Mar. 16, 2009); *see also Stuhlmacher*, 2012 WL 5866297, at *3 ("Although Dr. Conry maintains that the incorrect rivets were used in his supplemental report, he has now advanced the theory that the rivets were wrong for a new reason, their size."); *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-CV-178-BBC, 2012 WL 5416941, at *28 (W.D. Wis. Oct. 29, 2012) ("Although Cimini's new report covers the same general topics as his original report, it includes significant new details. Rule 26(e) is intended to

provide parties an opportunity to correct mistakes or oversights, not to include new examples and illustrations to bolster previous opinions.").

While the Court may strike those portions of reply reports that constitute improper rebuttal and leave the remaining parts that fairly respond to the opposing party's experts, *Cage*, 2012 WL 5557410, at *2, Plaintiffs' reply reports do not warrant being sustained in part.  Dr. Goldstein's reply is primarily dedicated to discussing his "current plan" to use Stata and the new additions to his methodology for using ICES.  Although the changes to Dr. Thomasson's methodology are not as numerous as those in Dr. Goldstein's reply report, her report still involves a significant addition to her formula for calculating damages so as to warrant striking the entire report.  Moreover, as discussed above, these reports were belatedly disclosed after the 30-day deadline and Defendants are substantially prejudiced because Plaintiffs' experts never revealed their new analyses until after they were deposed, discovery is closed, and the CMP deadlines have been enlarged multiple times.  Because significant portions of Dr. Goldstein's and Dr. Thomasson's reply reports do not contain proper rebuttal and they were untimely served, the reply reports are stricken in their entirety.

12

**IV.      Conclusion**

For the reasons above, Defendants' motion to strike the reply reports of Dr. Goldstein

and Dr. Thomasson [Docket No. 274] is granted.  The stayed briefing on Plaintiffs' motion for

class certification and Defendants' motions to exclude Dr. Goldstein's and Dr. Thomasson's

opinions pending resolution of this motion [*See* Docket No. 269] is lifted and the reply briefs for

both motions shall be filed within 14 days.

DATED:  12/18/2012

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

G. Douglas Abrams
ITTENBACH JOHNSON TRETTIN & KOELLER
abrams@ijtklaw.com

Kevin W. Betz
BETZ & BLEVINS
kbetz@betzadvocates.com

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

Craig L. Briskin
MEHRI & SKALET, PLLC
cbriskin@findjustice.com

Jenny R. Buchheit
ICE MILLER LLP
jenny.buchheit@icemiller.com

Daniel K. Burke
HOOVER HULL LLP
dburke@hooverhull.com

Aaron D. Charfoos
KIRKLAND & ELLIS LLP
aaron.charfoos@kirkland.com

Adam  Clay
INDIANA ATTORNEY GENERAL
Adam.Clay@atg.in.gov

John B. Drummy
KIGHTLINGER & GRAY
jdrummy@k-glaw.com

Benjamin C. Ellis
BETZ & BLEVINS
bellis@betzadvocates.com

14

Wendy Netter Epstein
KIRKLAND & ELLIS LLP
wendy.epstein@kirkland.com

Jason L. Fulk
HOOVER HULL LLP
jfulk@hooverhull.com

Melanie E. Harris
ICE MILLER LLP
melanie.harris@icemiller.com

Thomas J. Henderson
SANFORD WITTELS & HEISLER LLP
thenderson@swhlegal.com

Zachary D. Holmstead
KIRKLAND & ELLIS
zachary.holmstead@kirkland.com

Anna May Howard
SEVERNS & STINSON LAW FIRM
amh@severns.com

Andrew W. Hull
HOOVER HULL LLP
awhull@hooverhull.com

John F. Ittenbach
ITTENBACH JOHNSON TRETTIN & KOELLER
jfittenbach@IJTKlaw.com

Robert M. Kelso
KIGHTLINGER & GRAY
rkelso@k-glaw.com

Robert M. Koeller
ITTENBACH JOHNSON TRETTIN & KOELLER
rkoeller@ijtklaw.com

Laurie E. Martin
HOOVER HULL LLP
lmartin@hooverhull.com

Steven D. McCormick
KIRLAND & ELLIS LLP
smccormick@kirkland.com

Judith S. Okenfuss
ICE MILLER LLP
judy.okenfuss@icemiller.com

Martin L. Roth
KIRKLAND & ELLIS LLP
martin.roth@kirkland.com

Scott Richard Severns
SEVERNS & ASSOCIATES
sseverns@severns.com

Anne M. Sidrys
KIRKLAND & ELLIS LLP
anne.sidrys@kirkland.com

Steven A. Skalet
MEHRI & SKALET, PLLC
sskalet@findjustice.com

Diana M. Watral
KIRKLAND & ELLIS LLP
diana.watral@kirkland.com

L. Alan Whaley
ICE MILLER LLP
whaley@icemiller.com

Michael  Wroblewski
KIGHTLINGER & GRAY
mwroblewski@k-glaw.com

Michael A. Wukmer
ICE MILLER LLP
michael.wukmer@icemiller.com